UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:21-cr-163-MSS-CPT

CLAYTON EVERETT COLBORN

**UNITED STATES' SENTENCING MEMORANDUM**

The United States files this sentencing memorandum to request that this Court sentence the defendant to the guideline term of imprisonment of life. In support thereof, the United States submits as follows:

**I.  Background**

On July 26, 2022, Clayton Everett Colborn (Colborn) was indicted by a federal grand jury on a seven-count Superseding Indictment charging him with two counts of enticement of minors to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), four counts of production of child pornography, in violation of 18 U.S.C. § 2252(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). On March 28, 2023, Colborn pled guilty to the Superseding Indictment. The Court scheduled sentencing for July 12, 2023.

**II.  Presentence Investigation Report**

On June 28, 2023, U.S. Probation issued its Presentence Investigation Report ("PSR"). Doc. 64. It determined the defendant's applicable guidelines range for the underlying offenses as life imprisonment. PSR ¶ 157.  Probation reached this

calculation based on a total offense level of 43 and a criminal history category of I[1]. *Id.* As to Counts One and Two of the Superseding Indictment, the defendant is subject to a minimum term of imprisonment of 10 years and a maximum of life. PSR ¶ 156. As to Counts Three-Six, the defendant is subject to a minimum term of imprisonment of 15 years up to 30 years. *Id.* As to Count Seven, the maximum term of imprisonment is 10 years. *Id.* The defendant is also subject to a term of supervised release of five years to life. PSR ¶ 159-160. The defense seeks a two-level downward variance based upon the application of USSG § 2G1.3(b)(3), using a computer to commit the offense.

For the reasons that follow, the Court should not grant a downward variance. The Court should sentence the defendant to life as his conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands this sentence. The defendant poses an extraordinary danger to children in the community and that danger is unlikely to abate over time.

## III.   Argument for a Guideline Sentence

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United Sates*, 522 U.S. 38, 41 (2007). Although a sentencing court may not presume that a guideline-range sentence is reasonable, the Sentencing Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is

---

[1] An offense level of more than 43 is to be treated as an offense level of 43. USSG Ch. 5, Pt. 1, comment (n.2).

appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The defendant's conduct, considered in conjunction with the sentencing factors set forth, calls for a high-end guide-line sentence.

### A. Nature and Circumstances of the Offense

The nature and circumstances of this defendant's offense conduct exhibits the egregious exploitation of those who could not defend themselves: children. Between 2018 and 2020, Colborn used a social networking application to find minors for the purpose of engaging in sex acts. In total, Colborn communicated with or attempted to communicate with 2,418 different usernames. While Colborn was between 27 and 28 years old, he portrayed himself as a teenager and drove the various locations throughout the Middle District of Florida to meet and sexually abuse his victims. The FBI identified eight victims, ranging from 13 to 16 years old. Not only did Colborn

sexually abused his victims, but he also produced child sexual abuse images and videos of some of them. Colborn's iCloud account identified approximately 30 videos and 81 images, depicting Colborn engaged in sexual acts with minors. *See*, PSR ¶ 15-37.

Colborn's predatory behavior demonstrates his danger to the community. The seriousness and duration of Colborn's offense conduct demonstrates the necessity for a life sentence. The number of usernames, the number of times Colborn attempted to engage in sexual activity with a minor is staggering; as is how many victims he abused and with whom he produced child sexual abuse videos. This behavior not only spanned years, but also arrests. On February 3, 2020, Colborn was arrested by Ocoee Police Department, but on February 5, 2020, was released on bond. On February 7, 2020, records from the social media application show that Colborn was active on his account. He was also in possession of a child pornographic image, taken in approximately June 2020, while he was still out on bond. Colborn's arrest did nothing to deter his predatory behavior. Although this Court must consider other factors beyond the defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence here. *See, e.g.*, *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016) ("The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court.").

**B. History and characteristics of the defendant**

Colborn's history and characteristics also weigh strongly in favor of a guidelines sentence and does not support any downward variance. Colborn advised probation he was well provided for and there was no abuse in his childhood home. He described a

4

healthy relationship with both his parents, as well as his sibling. In short, there are no life circumstances present to mitigate the defendant's behavior. A term of life imprisonment is not unreasonable to address to the harm Colborn is capable of inflicting on the community.

### C. Seriousness of the crime and impact on the victims

All child pornography is inherently violent, in that it depicts the rape of non-consenting children. Indeed, every image of child pornography represents a victim who has been abused, exploited and raped. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Congress has expounded that the "just deserts" concept in sentencing is a means of reflecting the "gravity of the defendant's conduct," as well as the "harm done or threatened by the offense."   S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59As the Supreme Court has recognized, "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children …. [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation..." *New York v. Ferber*, 458 U.S. 747, 758–59 nn. 9–10 (citations omitted).

Colborn pled guilty to producing child sexual abuse material and committed hands-on sexual abuse of minors. Further, he created videos and images of that abuse.

The emotional and physical toll of that abuse is best described in the victims' own words, in their victim impact letters to the court. *See* PSR pgs. 33-46. Each victim describes her experience as traumatic, feeling "disgust," "embarrassment," "used," "gross," "groomed." *Id*. As one victim stated, "he deserves jail for life. He's affected all of us for life….it never goes away." *Id*. A guidelines sentence of life is necessary to recognize the victims harmed by the defendant's conduct and to restore public confidence in our laws protecting children.

### D. Promoting respect for the law

This Court's sentence must reflect the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. But the Act, and its later amendments, are more than prophylactic measures. They reflect value judgments and accept moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children…as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 43. Indeed, child sexual abuse "is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane

society can tolerate." *See Kennedy v. Louisiana*, 554 U.S. 407, 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting) (quoting C. Bagley & K. King, Child Sexual Abuse: The Search for Healing 2 (1990)). Colborn's actions violated federal law, but they also transgressed accepted social norms that undergird our laws. His conduct was unnatural, morally repugnant, and incompatible with a well-ordered society. This Court's sentence must express an appropriate level of social condemnation of his crime.

### E. The need for a just punishment

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring). As the Eleventh Circuit explained in *U.S. v. Irey,* 612 F.3d 1160, 1206 (11th Cir. 2010): "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d at 1206. Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)). "Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *U.S. v. Sarras*, 575 F.3d 119, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Here, the seriousness of the crimes, taken with the need for just punishment and the goal of

promoting respect for the law, weigh heavily in favor of a high-end guidelines sentence.

### F. Adequate deterrence and the need to protect the public

Deterrence is especially important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id*.

The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). Colborn fits well-within that class. As this Circuit recognized in *Irey*, research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." 612 F.3d at 1214 (citing various studies and reports); *see also Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.").

The Eleventh Circuit Court of Appeals has affirmed lengthy sentences for conduct bearing resemblance to Colborn's. In *United States v. Huskey*, the Eleventh Circuit affirmed a 70-year sentence for a defendant who, beginning when his daughter was six-years old and continuing for three years, engaged in anal, oral, and vaginal sex with her, also penetrating her with objects. 349 F. App'x 495, 496 (11th Cir. 2009).

*Huskey* is merely one example of the Eleventh Circuit rejecting reasonableness challenges to life and natural life sentences for conduct resembling Colborn's. *See, e.g.*, *United States v. Foster*, 209 Fed. Appx. 942 (11th Cir. 2006) (affirming life sentence for defendant with criminal history category I, who during a 4-year period engaged in oral and vaginal sex with a single victim, his daughter, who was less than 12-years old when the abuse began).

Indeed, the Eleventh Circuit has consistently upheld life and natural life sentences for acts that, although still egregious, are arguably less egregious than Colborn's conduct. For example, in *United States v. Sarras*, the Eleventh Circuit affirmed as substantively reasonable a 100-year sentence where the defendant had several sexual encounters with a single 13-year-old girl for roughly one year and took explicit photographs of her. *See* 575 F.3d 1191, 1220 (11th Cir. 2009). In *United States v. Johnson*, the Eleventh Circuit upheld as reasonable a 140–year sentence where the defendant, with a criminal history category of I, abused and photographed three boys—Victim 1, from 8–15 years old, Victim 2, from 14–16 years old, and Victim 3, from 13–14 years old. *See* 451 F.3d 1239, 1244 (11th Cir. 2006); *see also United States v. Kapordelis*, 569 F.3d 1291, 1318–19 (11th Cir. 2009) (upholding as reasonable a 420-month sentence, which represented an upward variance, where defendant engaged in a pattern over many years of molesting young teenaged boys and taking photographs of them).

This Court should also impose a guidelines sentence to send a strong warning to other individuals currently involved in or considering similar conduct. *See Irey, 612*

*F.3d at 120*8 ("There is another aspect of the compounding harm that the production and distribution of child pornography inflicts. It may incite or encourage others to sexually abuse children."). A guidelines sentence of life is necessary to convey that the federal Court system finds this conduct unconscionable and will impose heavy penalties to protect the most vulnerable amongst us.

### G. USSG § 2G1.3(b)(3): Probation correctly applied a two-level enhancement for use of a computer to complete the instant offense.

The defense position is that while this two-level enhancement was correctly applied, a two-level downward variance should be granted because it applies in virtually every case. The defense further states that the application of this enhancement is impermissible double counting. For the reasons that follow, the court should apply the two-level use of a computer enhancement in this case.

Imposition of two-level sentencing enhancement for use of a computer in connection with the charged offenses does not amount to impermissible double counting. *United States v. Little*, 864 F. 3d 1283 (11th Cir. 2017) (Two-level enhancement for use of a computer was not double counting in sentencing for transportation of child pornography and possessing child pornography since use of a computer was not required for transportation of child pornography.) see also, *United States v. Kiefer*, 760 F. 3d 926, 931 (9th Cir. 2014); *United States v. Alpizar*, 743 Fed. App'x. 928, 936 (11th Cir. 2018) (This Court explained that "USSG § 2G2.2 addresses a 'wide range of criminal conduct that occurs after child pornography has been produced.' To capture this wide range of conduct, 'guideline § 2G2.2 is structured so

10

that the range of harms associated with child pornography distribution can be addressed through various offense level increases and decreases.'" The enhancement for use of a computer does not cover the same conduct as the enhancement for distribution, and the application of both enhancements is not impermissible double counting.).

Furthermore, as using a computer is the primary way individuals now receive, possess, and distribute CSAM, that is not a reason to not apply this enhancement. "[I]t is not up to the courts to rewrite the guideline, which was 'promulgated pursuant to specific congressional directives or legislation.'" *Id*. at 938.

The application of the enhancement is applicable based upon the facts of this case. The defendant used a social media application to misrepresent his identity in order to lure minors into engaging in sexual activity. *See also, United States v. Carmona*, 625 Fed.App'x 963 (11th Cir. 2015). This enhancement should be applied to fully account for the defendant's conduct.

### IV. Conclusion

This Court should sentence Colborn to a guideline guidelines sentence of life imprisonment. Nothing in the offense conduct or the defendant's history and characteristics warrants a downward departure or variance. A guidelines sentence is the only reasonable sentence because it is the only sentence that reflects the seriousness of the defendant's crimes and relevant conduct, provides just punishment, fully protects children in the community, and promotes respect for the law.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney


By: */s/ Ilyssa M. Spergel*
     Ilyssa M. Spergel
     Assistant United States Attorney
     Florida Bar No. 0102856
     400 N. Tampa Street, Suite 3200
     Tampa, Florida 33602
     Telephone:   (813) 274-6300
     Facsimile:    (813) 274-6178
     E-mail: ilyssa.spergel@usdoj.gov

U.S. v. Clayton Everett Colborn        Case No. 8:21-cr-163-MSS-CPT

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ Ilyssa M. Spergel*
Ilyssa M. Spergel
Assistant United States Attorney
Florida Bar No.
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602
Phone: (813) 274-6000
Fax: (813) 274-6103
Email: ilyssa.spergel@usdoj.gov