UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Case No.: 8:21-CR-163-MSS-CPT |
| | : | |
| | : | |
| CLAYTON EVERETT COLBORN | : | |
| _____ | : | |

## **CLAYTON EVERETT COLBORN'S SENTENCING MEMORANDUM**

COMES NOW, the Defendant, CLAYTON EVERETT COLBORN, by and through his undersigned counsel, and files this his sentencing memorandum and in support states as follows:

### Introduction

On Thursday, August 17, 2023 the Defendant will stand in judgment before this Honorable Court for the crime he committed - and more importantly for the crime he has accepted full responsibility *for* committing.

The Defendant nor his counsel will minimize the negative effect the Defendant's criminal conduct has had and will continue to have upon his victims, their families, the community in which he lives, the judicial system, state and federal law enforcement agencies, his family, his friends, and himself.

The Defendant will allocate and when he does, he will blame only himself. Quite frankly, the Defendant is humiliated and ashamed. Sentencing will most certainly be a difficult day for the Defendant, his family, and his friends.

However, a sentencing is not meant to punish alone. The Defendant offers this sentencing memorandum, and its exhibits, in mitigation of his criminal conduct to assist this Honorable Court in fully assessing him so that it may reach a sentence that is sufficient but not greater than necessary under law.

## I.    Presentence Investigation Report

Undersigned counsel and the Defendant do not object to the factual accuracy of the presentence investigation report.

Undersigned counsel and the Defendant do not object to the legal accuracy of the presentence investigation report.

## II.    Sentencing Process

In order to arrive at a sentence that is sufficient but not greater than necessary, and to comply with the purposes set forth in paragraph two of Title 18 United States Code Section 3553(a), the Defendant understands this Honorable Court will first calculate the Defendant's federal sentencing guideline sentence range, next consider any departures based on the criteria set forth in the federal sentencing guidelines from Sections 5K1.1 to 5K3.1, and, finally, consider whether the sentence imposed should be different from either the federal sentencing

guideline sentence or the departure sentence (if any), after considering the factors set forth in 18 United States Code Section 3553(a).

- The advisory federal sentencing guideline range as calculated by United States Probation is accurate.

- The parties do not expect a downward departure motion to be filed by the government.

- In this submission, the Defendant posits there is a basis for a downward variance, discussed in detail in the next section.

## III.    Title 18 United States Code Section 3553(a)

Prior to the United States Supreme Court decisions in *United States v. Booker*, 543 U.S. 220, 245-67 (2005), *Rita v. United States*, 127 S.Ct. 2456 (2007), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38, 53 (2007), the federal sentencing guidelines were mandatory, not advisory, on a federal district court judge. As we all know, because of the above cases, the federal sentencing guidelines are now advisory in nature and equal in weight to the Title 18 United States Code 3553(a) factors.

The Title 18 United States Code Section 3553(a) factors that a district court judge must take into equal consideration to the federal sentencing guidelines are as follows:

- The nature and circumstances of the offense and the history and characteristics of the defendant; 18 United States Code Section 3553(a)(1); and

- The need for the sentence imposed; 18 United States Code Section 3553(a)(2); and

  - to reflect the seriousness of the offense, to promote respect for the law,   and to provide just punishment for the offense.

  - to afford adequate deterrence to criminal conduct.

  - to protect the public from further crimes of the defendant.

  - to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

- The kinds of sentences available; 18 United States Code Section 3553(a)(3); and

- The need to avoid unwarranted disparity among defendants with similar records and similar crimes; 18 United States Code Section 3553(a)(6); and

- The need to provide restitution to any victims of the offense. 18 United States Code Section 3553(a)(7).

There is no doubt the Defendant committed the crimes set forth in his presentence investigation report. As a result, the Defendant knows, and most

importantly accepts, that now is the time that he must be punished for his criminal actions. But as this Honorable Court certainly knows better than anyone, a federal sentencing is not designed to punish alone. If so, there would be no need for a presentence investigation report, sentencing submissions by the parties, and the sentencing hearing itself.[1] Instead, it would be like 2004 and before – quick, painless, and expedient - for everyone but the Defendant.

But the Defendant, like all other federal defendants waiting to see how much of their lives will be taken from them at sentencing, is exactly the person for whom an individualized sentencing is designed. The Defendant is more than just his criminal actions in this case. His story deserves to be heard and considered. It is the Defendant's belief that a guideline imprisonment sentence is therefore unreasonable.

The Defendant offers the following in support of her request for a downward variance.

A.    Mitigation Variance Analysis

This Honorable Court must begin its sentencing analysis at the advisory federal sentencing guideline imprisonment range, but it should not end its sentencing analysis at the advisory federal sentencing guideline imprisonment range, because doing so would result in a greater than necessary sentence under the

---

[1] Undersigned counsel is aware this Honorable Court is well-versed in this area of the law and will now move forward in this sentencing memorandum to an application of fact and law analysis as a result.

law. After considering the factors set forth under Title 18 United States Code Section 3553(a), this Honorable Court should vary downward.

Here are the relevant Section 3553(a) mitigating factors this Honorable Court should consider:

**The need to avoid unwarranted disparity among
defendants with similar records and similar crimes.
18 United States Code Section 3553(a)(6); and**

In the *United States v. David Jacob Mitchell*, 8:22-cr-00168-MSS-SPF-1, this Honorable Court sentenced similarly situated federal defendant David Jacob Mitchell to 600 months in custody of the Bureau of Prisons. Both Mr. Mitchell and Mr. Colborn engaged in the same type of criminal conduct.

**This Honorable Court should consider the
mitigating history and characteristics of the Defendant.
18 United States Code Section 3553(a)(1).**

**This Honorable Court should consider the mitigating need for the sentence
imposed to provide the Defendant with needed educational or vocational
training, medical care, or other treatment in the most effective manner.
18 United States Code Section 3553(a)(2).**

<u>Personal and Family History</u>

On September 2, 1991, Clayton Everett Colborn was born in Hillsborough County, Florida, to parents Gail Booth and Mark Emory Colborn. Clayton grew up with his older sister, Celeste, in a mostly rural neighborhood in Land O' Lakes, Florida. His family lived in a three-acre property, where his parents provided him with a nurturing home. Gail was a stay-at-home mom who dedicated her time to

creating fun experiences for her children, such as setting up a large maze in the backyard and providing a swing set, a trampoline, and a sliding board.

Things took a difficult turn in 2000 when Clayton's parents separated due to Mark's excessive drinking. Despite the challenges, Gail remained committed to providing positive influences in Clayton's life. She enrolled him in karate and guitar lessons, and she enlisted him in a soccer team, attending all his games. Throughout his middle school years, Clayton excelled academically and behaved well at school and at home.

In high school, Clayton experienced what Gail perceived as a regular "acting out phase." His behavior worsened over time as he started smoking and drinking. He seemed to lose his way, and he fell in with the wrong crowd, struggling to find his place in life.

Gail decided to pull Clayton out of high school to protect him from negative influences. She hoped he would attend GED classes and then community college, but Clayton resisted and struggled to find friends his age to associate with. During this period, he briefly lived with his father, but it did not lead to any significant improvement, so he eventually returned to live with Gail.

Clayton managed to turn things around after moving back with Gail. He took charge of his life, working two jobs, saving money, and paying for his own

expenses. He moved out at the age of 27 and got his own apartment. He was well-liked by his neighbors for being helpful and kind.

Clayton has never been married and has no children. He maintains a close relationship with his family, and both of his parents are supportive and concerned about him. Gail describes her son as a kind, smart, and sensitive person, and she finds his criminal actions difficult to reconcile his actions with the person she knows him to be. She believes Clayton needs help and hopes the court will show him some measure of mercy.

*Analysis*

Analyzing Clayton's history, it is evident that he faced challenges during his adolescence and struggled with external influences. Clayton seemed adrift during his high school years and beyond. He grappled with an inability to find a peer group he could associate himself with as he tried to find his path. To an outside observer, it seemed that Clayton had finally found his way, working multiple jobs to pay his own way, and establishing his own residence, transportation, and subsistence.

Obviously, however, Clayton continued to deal with internal strife and engaged in behavior that could not be reconciled with outward appearances. Clayton is a person in need of help and support. Receiving professional

intervention and support could help him address his underlying issue and continue his personal growth journey if only he is given the chance.

Educational History

After completing the tenth grade at Land o' Lakes High School, Clayton faced difficulties during the eleventh grade, leading him to withdraw from school. The reasons for his struggles were attributed to marijuana use, skipping school, and associating with a negative crowd. His mother, Gail, tried to guide him, but he found himself adrift and feeling isolated, which affected his overall high school experience.

During high school, Clayton had an unremarkable time, lacking participation in extracurricular activities or clubs. This, combined with difficulty finding a supportive group of friends, further contributed to Clayton's sense of disconnection from the school environment. Despite his GED achievement in 2008, Clayton's lack of interest in school at the time resulted in less-than-stellar grades during his community college general studies program. He eventually withdrew without completing a degree.

Clayton now has a passion for learning and exploring various subjects. He aspires to further his education while incarcerated, with a strong interest in studying languages, automotive mechanics, and computer engineering. His love for

reading economics, philosophy, and literature showcases his intellectual curiosity and desire for meaningful pursuits.

*Analysis*

Clayton's high school experience was marked by challenges that impacted his academic performance and social interactions. It is commendable, however, that he obtained his GED despite the difficulties he faced.

Even under his present circumstances, Clayton could find success in higher education, as he is now motivated to pursue fields that genuinely interest him. Focusing on areas he is enthusiastic about, such as languages, automotive mechanics, and computer engineering, could help him find academic fulfillment and maximize his potential.

Work History

Clayton's journey in the workplace has been primarily centered around the restaurant industry, where he honed his skills for kitchen management. His career started when he earned a certification in food management from ServeSafe, which laid the foundation for his subsequent jobs.

In 2020, Clayton found an opportunity at Wolf's Den Restaurant in Wesley Chapel, Florida, where he excelled as a kitchen manager. His strong work ethic and dedication made him stand out, earning him high praise from his manager, who considered him to be the best employee he had ever had in his business career.

During his tenure at Wolf's Den, Clayton exhibited not only leadership but also initiative. He once purchased a pressure washer and rallied the kitchen staff to thoroughly clean the kitchen, showcasing his ability to bring the team together and maintain a clean, efficient workspace. In 2019 and 2020, Clayton employed as a lead kitchen worker at the Village Inn in Land o' Lakes, Florida. For approximately seven years, Clayton was employed as a kitchen manager at The Breakfast Nook in Lutz, Florida. He left that job because of a disagreement between him and the other managers. Clayton has also worked at Publix, Big Lots, and other retail stores.

Clayton would like to run his own business one day or serve as an executive at a company. He is not certain what kind of business he would like to own, but he thinks a restaurant would be a good idea based on his work history.

*Analysis*

Clayton's work history reveals a strong commitment to the restaurant industry and kitchen management. His certification in food management and years of experience as a kitchen worker and manager demonstrate his expertise and understanding of the culinary business. His dedication and hard work, as evidenced by the successful pressure washing initiative, demonstrate his proactive approach to problem-solving and team management.

Clayton aspires to eventually run his own business or serve as an executive in a company. Given his successful track record in kitchen management, owning a restaurant one day could be a viable option for Clayton if he is given the opportunity.

Clayton's work history reflects a dedicated, hardworking individual with abilities in the restaurant industry. Given the chance, Clayton has the potential to succeed in realizing his dream of owning a business.

<u>Physical Health</u>

Clayton is conscious of his physical health, trying to maintain the healthiest lifestyle possible under the circumstances. He pays close attention to his diet and regularly engages in workouts to stay fit. At the age of eleven, Clayton was diagnosed with Osgood Schlatter disease, a condition that affected both of his knees and hindered his ability to participate in soccer. Despite this disappointment, Clayton was determined to overcome the condition and was advised to manage it through icing and stretching. His adherence to the recommended treatment allowed him to cope with the condition effectively.

*Analysis*

Clayton's conscious effort to eat as healthy as possible and maintain a regular workout routine demonstrates a proactive approach to physical well-being.

His commitment to a healthy lifestyle is commendable and likely plays a significant role in his current well-being, but medical professionals treating him should remain vigilant about identifying any lingering effects of his past diagnosis of Osgood Schlatter disease.

### Mental Health

Clayton's mental health history has been marked by several concerning incidents and persistent struggles. At the age of seventeen, he attempted suicide by taking an overdose of sleeping pills. This incident resulted in him being kept under observation at a hospital for several days. The underlying cause of his depression at that time was the fact that some of his friends had transferred to a different school, leaving him feeling lonely and isolated. These feelings of loss and longing for connection drove him to the brink of self-harm.

Throughout his life, Clayton has been plagued by thoughts of self-harm, including the period just before he was jailed. Clayton's sense of purpose remains uncertain, and he experiences feelings of hopelessness, likely exacerbated by the lack of meaningful connections and friendships. Clayton's low self-esteem is evident in his belief that he is not as successful or accomplished as others his age, leading him to feel inadequate and unworthy. The comparison with his peers seems to be a significant source of distress for him, and he feels that he is falling behind and not living up to societal expectations.

*Analysis*

Clayton's mental health history highlights several important factors that may be contributing to his struggles: (1) the suicide attempt at age seventeen, which left lasting emotional scars and contributed to ongoing feelings of hopelessness and self-harm ideation, (2) the loss of friends and social connections during his adolescence that triggered feelings of loneliness and a lack of belonging, which persisted into adulthood; (3) the low self-esteem and negative self-perception, which further exacerbate his depressive symptoms; and (4) the unrealistic expectations and social comparisons, which led to feelings of dissatisfaction and frustration.

Given Clayton's history of a suicidal attempt and persistent throughs of self-harm, depression, and low self-esteem, it is crucial that he receives professional mental health support and intervention. A therapist or counselor could help him work through his past traumas, develop coping strategies, and challenge negative thought patterns. Seeking help is a sign a strength, and Clayton is crying out for help at this time. His willingness to receive mental health treatment is a positive step toward healing and growth.

## Substance Use and Abuse

Clayton's substance abuse history began when he was around fifteen or sixteen years old, experimenting with alcohol. Initially, his alcohol consumption

was sporadic, but it gradually escalated as he reached the age of 21, when he started drinking it several times a week. At the age of 24, he decided to quit drinking.

At the same time, he started drinking, Clayton also began using marijuana. Initially, he used it on a monthly basis, but over time, his usage escalated to a weekly and eventually daily habit. Additionally, he experimented with synthetic marijuana, or spice, regularly until 2019.

As Clayton entered his early 20's, he became increasingly aware of how marijuana was impacting his life negatively, hindering his progress in various aspects. This realization prompted him to gradually cut back on marijuana use until he finally quit altogether.

Although Clayton managed to overcome his marijuana use, he faced a brief relapse when peer influence led him back to using the drug. However, his last use was in February 2020, and since then, he has remained committed to staying drug-free. He firmly believes it is unwise and detrimental to achieving long-term goals. He would like to receive drug treatment to reinforce his decision to abstain from drug use.

*Analysis*

Clayton's substance abuse history illustrates a pattern of experimentation and escalation with both alcohol and marijuana. His early exposure to these

substances during adolescence may have contributed to their continued use in his early adulthood. Notably, Clayton acknowledged that his marijuana use was affecting his life negatively and took proactive steps to reduce and ultimately quit using the drug. This shows a level of self-awareness and determination.

Clayton's brief relapse into marijuana use due to peer influence highlights the significance of external factors in his substance abuse behavior. Clayton's desire to seek drug treatment indicates his commitment to maintaining a drug-free lifestyle and solidifying his decision to abstain from drug use.

Addressing Clayton's substance abuse history is essential to support his commitment to sobriety and reinforce his belief that drug use hinders personal growth. Clayton should participate in drug treatment programs and support groups to provide him the necessary tools and assistance to stay on the path of abstinence.

<u>Personal Accomplishments and Future Plans</u>

Clayton sees himself as a stable, sensible, and responsible person who is a leader. He likes to be an example for others on the job, and he really tries to do good things and help people. As a kitchen manager, he was able to help his employees when they needed help. And even in jail, Clayton tries to cheer others up and help them with positive thoughts.

Clayton is profoundly sorry for his actions and understands that punishment is necessary and inevitable. But he hopes the Court will temper justice with mercy

and impose a sentence that will allow him some period of time to experience freedom and to attempt to redeem himself.

<u>United States Sentencing Guideline Section 2G2.2(b)(6).</u>

United States Probation properly increased the Defendant's base offense level by two levels because his offense involved the use of a computer pursuant to United States Sentencing Guideline Section 2G2.2(b)(6). The reality is, while this is scored properly, the days of possessing, receiving, purchasing, or trading pornography or child pornography via backrooms, hidden areas or secret societies are over. It is all on the internet. If you want it, it is there - after only a few clicks on a keyboard and movements of a mouse.

Computers, be it a smart watch, a smart phone, a tablet, a laptop, a desktop, or something that undersigned counsel is not yet aware of, dominate every facet of modern human life. It is nearly impossible to conduct personal or professional business without some sort of a computer device. Whether it is conducting court in a pandemic, obtaining the latest news from the Tampa Bay Times, exchanging an email with a friend or colleague, or simply checking the latest sports score, a computer device has replaced any other means of doing any of the above in nearly every instance.

The same unfortunately is true for committing criminal conduct. While this is not an excuse for the criminal conduct, it is the reality. As a result, no longer

should a federal defendant receive an increase for using a computer when in most, if not all, instances, but especially the crimes for which the Defendant in this case pled guilty, it is necessary to commit the criminal conduct at issue.

The "use of computer" enhancement under United States Sentencing Guidelines Section 2G2.2(b)(6) was promulgated during an earlier era of computer and Internet technologies when certain enhancements were intended to apply only in atypical or aggravated cases. But because of today's computer and Internet technologies, including peer-to-peer file-sharing, the Section 2G2.2(b)(6) enhancement applies to virtually every "typical" federal defendant, notwithstanding the fact that a wide range of defendants in terms of culpability and dangerousness exists. Because this enhancement, and other enhancements in Section 2G2.2, apply to almost all "typical" defendants, Section 2G2.2 does not effectively distinguish among federal defendants in terms of their relative culpability and dangerousness, which is a fundamental goal of the sentencing guidelines system.

## IV.   Sentencing Position

Once this Honorable Court calculates the Defendant's final offense level under the advisory federal sentencing guidelines and considers the factors set forth in 18 United States Code Section 3553(a), the Defendant respectfully submits a

prison sentence within the current advisory federal sentencing guideline range is greater than necessary.

However, the Defendant understands and accepts that he does not have the final say on the issue of incarceration. Because he pled guilty to a plea agreement and an information, the Defendant understands and accepts that the final decision regarding his fate rests with this Honorable Court. All the Defendant can do is make his case in this written submission and again in open court at his sentencing hearing.

The Defendant respectfully requests this Honorable Court grant a downward variance based upon the information in this sentencing memorandum and the presentence investigation report.

## <u>CONCLUSION</u>

WHEREFORE, the Defendant, CLAYTON EVERETT COLBORN, by and through her undersigned counsel respectfully requests this Honorable Court will grant the requested relief/and or any other relief deemed necessary.

Respectfully submitted,

By: /s/ Mark J. O'Brien
Mark J. O'Brien, Esquire
Florida Bar No.: 0160210
511 West Bay Street
Suite 330
Tampa, Florida 33606
T:    (813) 228-6989
E:    mjo@markjobrien.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on July 25, 2023 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to all counsel of record.

By: /s/ Mark J. O'Brien<br>
Mark J. O'Brien